In the Interest of Aaron Kelly
FITE, a Minor Child, Joe
Lenn Fite, Appellant,

v.

Ronald and Ruth NELSON, Appellees.

No. C14–92–01086–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 6, 1994.

Thomas S. Nelson, Carrollton, for appellant.

Jolene Wilson–Glah, Debra Redman, Houston, for appellees.

Before ROBERTSON, CANNON and MORSE, JJ.

## OPINION

ROBERTSON, Justice.

This is an appeal from a judgment terminating the parent-child relationship between appellant Joe Lenn Fite and Aaron Kelly Fite, a minor child. Appellant brings three points of error challenging the trial court's authority to issue the judgment. Appellant's points are based upon his allegation that the trial court had a duty to transfer the cause to the 303rd District Court of Dallas County, that there was no clear and convincing evidence to support the trial court's judgment, and that termination of the parent-child relationship was not in the best interest of the child. We affirm.

Aaron Kelly Fite was born on October 3, 1984. He was brought by his mother, Tammy Rae Fite, to live with the appellees two days after he was born. Appellees are Aaron's maternal grandparents. Two days later Tammy Fite departed; Aaron was left behind and has resided with appellees since that date.

Ruth Nelson testified at trial that Aaron's father, Joe Lenn Fite, learned of Aaron's birth 12 days after the fact, but refused to acknowledge the boy as his own. Joe Lenn Fite disputed that he denied Aaron was his son. Joe Lenn Fite had lived apart from his wife, in Austin, Texas, since March of 1984, nearly seven months before Aaron's birth.

Six months after Aaron's birth, Joe Lenn Fite brought the other two children of the marriage, Joanna Rae Fite and Troy Wilson Fite, to live with the grandparents. According to testimony of the grandparents, Joe Lenn Fite told them he could not handle being a single father and asked them to care for both children. The grandparents also testified that Joe Lenn Fite continued to deny that Aaron was his child.

A Suit Affecting the Parent–Child Relationship ("SAPCR") was subsequently instigated. At that time the 309th District Court of Harris County ("Harris County court") acquired continuing jurisdiction over the children. The cause was heard on August 7, 1985, and appellees were appointed managing conservators of all three children. Appellant Joe Lenn Fite and his wife, Tammy Rae Fite, were appointed possessory conservators. A final decree was entered on August 21, 1985. At that time, the Harris County court acquired continuing and exclusive jurisdiction over the children.

Joanna later went to live with her mother, and Troy Fite to live with his father. The grandparents testified that both children were old enough to remember their parents, missed them, and wanted to go live with them. After living with her mother for a short while, Joanna went to live with her father. The two older children have resided continuously with him since that time.

Joe Lenn Fite testified that he attempted to file a pro se divorce in Travis County in 1986, but that the suit was dismissed. On June 30, 1988 Joe Lenn Fite and Tammy Rae Fite filed for divorce in the 303rd District Court of Dallas County, Texas ("Dallas County court"). That matter was still pending at the time this cause came to trial, however, when it was submitted for oral argument on this appeal, appellee's notified this Court that the divorce suit in Dallas County had been dismissed for want of prosecution on October 26, 1993.

On September 22, 1988, appellees filed a petition for termination and adoption with regard to Aaron Fite in the Harris County court, which was the court having continuous and exclusive jurisdiction of all three children. Appellant responded and filed a motion to modify managing conservatorship of all three children, as well as a motion to transfer, on December 1, 1988. His motions were filed not under the cause number assigned to the petition to terminate and adopt, but under the cause number of the original 1985 SAPCR. The court entered an order transferring Joanna and Troy Fite. It later dismissed the motion to modify on August 1, 1991, for want of prosecution. The court retained jurisdiction over Aaron Fite.

On February 17, 1992, the Harris County court considered the petition for termination and adoption, and found for appellees. Appellant's parent-child relationship with Aaron Fite was terminated.

Before proceeding, this Court must take notice that appellees have filed a supplemen-

tal brief and argue that appellant's first point of error is moot because the divorce action has been dismissed and should thus be overruled. Appellant's attorney responded at oral argument by stating he had spoken with the clerk of the Dallas County court, and that the clerk had informed him the suit was inadvertently dismissed, and that it would be reinstated. Consequently, to insure that all of appellant's claims are fully adjudicated, we choose to address his first point of error on the merits.

■ In his first point of error, appellant argues that the Harris County court was required to transfer jurisdiction of Aaron Fite to the Dallas County court. Appellant relies upon section 11.06 of the Texas Family Code. That section provides:

> On a showing that a suit for dissolution of the marriage of the child's parents has been filed in another court, the court having continuing jurisdiction of a suit affecting the parent-child relationship shall transfer the proceedings to the court where the dissolution of the marriage is pending.

TEX.FAM.CODE ANN. § 11.06(c) (Vernon 1986). The transfer is a mandatory, ministerial act. *Neal v. Avey,* 853 S.W.2d 707, 709 (Tex. App.—Houston [14th Dist.] 1993, writ den'd).

Nevertheless, this case is distinguishable from *Avey,* and does not fall within the ambit of Rule 11.06(c). The distinction between "continuing" and "continuing, exclusive" jurisdiction is what controls our decision. Section 11.05(e) of the Family Code provides that a court does not acquire "continuing, exclusive" jurisdiction over a suit affecting the parent-child relationship *until* a final decree is entered. Before the court enters a final decree, it merely has "continuing" jurisdiction.

Rule 11.06(c) applies only to a court with continuing jurisdiction. A court with continuing jurisdiction necessarily has an ongoing suit involving the child. The Texas Legislature has wisely acknowledged that it is undesirable to permit different courts to control various segments of the marital relationship. Therefore, the Legislature established a requirement under section 11.06(c) for uniting a suit affecting the parent-child relation-

ship with a suit for divorce. *Neal v. Avey,* 853 S.W.2d at 709.

When that suit has proceeded to a final judgment, and a final decree has been entered, however, the public policy reasons behind uniting two ongoing suits affecting the marital relationship in one court give way to the more important public policy concerns behind promoting judicial economy and preventing re-litigation of previously litigated issues. Consequently the Family Code provides that when a final decree has been signed, the trial court in the SAPCR acquires continuing *and* exclusive jurisdiction over the child.

The plain language of Rule 11.06(c) indicates that it applies only to courts with continuing jurisdiction, and not to a court that has continuing, exclusive jurisdiction. We therefore decline to construe section 11.06(c) to require that a trial court which has already litigated the issues surrounding the parent-child relationship, reached a decision, and entered a final decree, must subsequently transfer jurisdiction over the child to another court where the same issues will be relitigated. There was no mandatory requirement that the Harris County court transfer jurisdiction of Aaron Kelly Fite to the Dallas County court where the divorce action was pending. We overrule appellant's first point of error.

■ In his second point of error appellant argues that there was not clear and convincing evidence to support the court's verdict. Clear and convincing evidence is "that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State v. Addington,* 588 S.W.2d 569, 570 (Tex.1979). In deciding whether the evidence is factually sufficient, this Court considers, weighs, and examines all the evidence which supports, and which is contrary, to the verdict. *Plas-Tex., Inc. v. United States Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). We will set aside the verdict only if it is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong, or if standing alone it is too weak to support the

finding. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (*per curiam* ).

■ A trial court may terminate a parent-child relationship if it finds that the parent has engaged in any specific conduct enumerated under Section 15.02(1), and the termination is in the child's best interest as required under Section 15.02(2). TEX.FAM. CODE ANN. § 15.02 (Vernon Supp.1993). Both criteria must be met to support a verdict terminating the parent-child relationship. The trial court terminated the parent-child relationship under both prongs of Section 15.02.

Under Section 15.02(1)(F), the trial court may terminate the parent-child relationship if the parent has failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition. The Harris County court in the 1985 SAPCR suit ordered Appellant to pay $100 a month in child support for the three children. Approximately 77 months passed between the date that final decree was issued and this cause came to trial on the petition to terminate and adopt. Simple calculations indicate that some $7700.00 should have been paid in support. Nevertheless, appellant's own testimony shows that he paid only $635.00. Furthermore, appellant testified that although he had an income of approximately $1,700.00 a month throughout the period in question, the last time he had paid any support for Aaron was $500.00 in April, 1986. Appellant's testimony indicates no financial difficulties, obligations, or other hardships which might have precluded him from making the payments. Appellant also failed to provide medical and dental insurance for Aaron for about 15 months prior to trial.

In *McGowen v. State,* 558 S.W.2d 561, 565 (Tex.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.), this Court held that failure to pay court ordered support was sufficient to support termination of the parent-child relationship under section 15.02(1)(F). The evidence in this case was clear and convincing that appellant failed to provide any support for Aaron from April, 1986, until the time of trial. The trial court could easily have concluded that appellant's conduct amounted to a conscious disregard of his duty to provide support for Aaron.

■ Appellant nonetheless argues that because he accepted responsibility for the care of Joanna and Troy he was absolved of the duty to pay the child support. He cites section 14.40(c) of the Family Code to support his contention. That section provides:

If the managing conservator has voluntarily relinquished to an obligor the actual care, control, and possession of a child for a time period in excess of any court-ordered periods of possession of and access to the child, the obligor may affirmatively plead and prove the fact that actual support was supplied to the child as a defense in whole or in part to a motion for contempt for failure to make periodic payments according to the terms of a court order.

Section 14.40(c) applies to contempt proceedings. Appellant asks this Court to extend the Rule's rationale to apply in a proceeding to terminate the parent-child relationship. We decline to do so. An action for contempt is used as a means of enforcing court ordered child support. An action to terminate the parent-child relationship, however, is designed to determine whether, due to specific statutory violations, it is in the best interest of the child to terminate the relationship.

Furthermore, section 14.40(c) would be a defense to a contempt proceeding only if appellant had taken custody of all three children. The child support order issued by the court in the 1985 SAPCR proceeding required that $100.00 be paid, per month, to support all three children. Thus, the fact that two of the children lived with appellant does not alter the fact that he had a duty to pay support for Aaron. The logic of this is borne out by the fact that the court's order provided that money was to be paid until the last child, Aaron, had reached the age of 18. Thus, when Joanna and Troy became 18 years old, and presumably emancipated adults, appellant's obligation still would not have abated. The proper remedy for appellant to take if he desired to change the amount of the support was to petition the

Harris County court to modify the support order. Appellant did not do so.

We likewise reject appellant's argument that by leaving Aaron with the grandparents he made arrangements for the adequate support of the child. Appellant's reliance on *Broken Leg v. Butts*, 559 S.W.2d 853 (Tex. Civ.App.—El Paso 1977, ref'd n.r.e.), *cert. denied*, 442 U.S. 946, 99 S.Ct. 2894, 61 L.Ed.2d 318 (1979), is misplaced. The El Paso Court of Appeals specifically distinguished between sections 15.02(1)(B) and 15.-02(1)(F), holding that the test under 15.-02(1)(B) revolved around whether a parent made arrangements for the adequate support of the child, whereas, under 15.02(1)(F) the test was whether the parent *supported* the child in accordance with his ability. *Id.* at 856. The trial court in the instant case terminated under section 15.02(1)(F).

Moreover, appellant would have this Court believe that by leaving Aaron with his grandparents he made arrangements for adequate support. In reality, the Harris County court made adequate arrangements for Aaron's support by appointing appellees managing conservators and ordering appellant to pay support. We further note that it was not appellant who left Aaron with his grandparents, it was Aaron's mother. The grandparents' testimony indicates appellant denied Aaron was his son at the time Aaron was left with them. The trial court also terminated appellant's parent-child relationship under section 15.02(b). We conclude that, under the facts of this case, there was clear and convincing evidence to support the trial court's finding. We overrule appellant's second point of error.

▆ In his third point of error, appellant insists that the trial court's verdict is not in the best interest of the child. We disagree. Under Section 15.02(2) a trial court may terminate a parent-child relationship if it finds that it is in the child's best interest. In determining what is in the child's best interest, the court may consider various factors, including:

(A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (h) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). This list is, of course, by no means exhaustive. *Id.*

Aaron was left with his grandparents since birth. Appellant initially denied Aaron was his son. Appellant has visited with Aaron only about 20 times over an eight year period, for about six hours each time. This amounts to about 120 hours out of over 70,-080 which have passed since Aaron's birth. Appellant sent Aaron no birthday presents in 1985, 1986, 1987, or 1988. Appellant sent Aaron no Christmas gifts or cards in 1985, 1986, 1987, 1988, or 1991. Appellant did not call or write to Aaron on a regular basis.

Moreover, Aaron refers to his grandparents as "mom" and "dad," and to his father as "Joe." Aaron attends a private school, does well academically, and is involved in extra-curricular activities. Aaron's grandfather helps him with homework. Appellees have taken Aaron to church every week. Appellant admitted that he had never consulted with Aaron's teachers or inquired about his academic progress. He admitted never consulting with Aaron's physician or dentist. Finally, Aaron's grandmother testified that Aaron fears being taken away from them. For this reason, she asserted, they started the termination and adoption proceeding.

The decision as to what is in the best interest of the child is within the sound discretion of the trial court. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984) *(per curiam )*. In reviewing the sufficiency of the evidence, this Court will not substitute its judgment for that of the fact finder. *Id.* We conclude that there was evidence that termination of appellant's parent-child relationship was in

the best interest of Aaron Fite. The trial court did not abuse its discretion. We overrule appellant's third point of error. We affirm the judgment.

MORSE, J., sitting by designation.

CANNON, J., not participating.